**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| HARTWELL FIRST UNITED METHODIST CHURCH, INC.<br><br>Plaintiff,<br><br>v.<br><br>HARTWELL RAILROAD COMPANY F/K/A HARTWELL RAILWAY, AND GREAT WALTON RAILROAD COMPANY,<br><br>Defendants | : | CASE NO. 3:16-CV-169<br>Removed from the Superior Court of Hart County, Georgia<br>Case No. 16HV00611M |

**BRIEF OF HARTWELL FIRST UNITED METHODIST CHURCH IN SUPPORT OF MOTION FOR REMAND TO STATE COURT**

Hartwell First United Methodist Church ("Church" or "Plaintiff") hereby files this Brief in support of its Motion for Remand to State Court (the "Motion"). The Motion seeks, pursuant to 28 U.S.C. §1447(c), to have the Court find that this case has been improperly removed from the Superior Court of Hart County, Georgia ("Superior Court"), and order that the case be remanded back to Superior Court.

## Background

Defendants Hartwell Railroad Company f/k/a Hartwell Railway, and The Great Walton Railroad Company (together, the "Railroads" or "Defendants") hold a twenty-foot railroad right of way[1] that bisects property owned by the Church in Hartwell, Georgia. There is a single set of railroad tracks within the right of way. The Railroads have not used the track within the right of way for at least 15 years. On November 23, 2016 (the day before Thanksgiving), the Railroads

---

[1] The right of way is held by Hartwell Railroad. Its affiliate The Great Walton Railroad Company has authority to operate over the track within the right of way.

entered onto the Church's property and began construction of a spur track running from the track within the right of way, onto and through the Church's property outside of the right of way. Despite the Church's objections, the Railroads continued construction on November 25 and again on November 28, 2016. As part of the construction the Railroads tore up the Church's property, and destroyed two walkways between Church facilities that crossed the right of way pursuant to a license previously granted to the Church by the Railroads.

In order to combat the continuing trespass, on November 28, 2016, the Church filed a Petition for Declaratory Judgment and Injunctive Relief (the "Petition") in the Superior Court of Hart County, Georgia, docketed as Case No. 16HV00611M. A copy of the Petition is attached as Exhibit 1 to the Notice of Removal filed by the Railroads on December 23, 2016. The Petition seeks a declaration that the Railroads do not have any property interests outside of a twenty-foot right of way that was condemned by their predecessors in 1880 (and confirmed by a survey conducted by the Office of Special Engineer dated June 30, 2016, recorded in Hart County pursuant to the 2008 Act of the Georgia Assembly, OCGA §44-5-167), and that the Railroads were wrongfully constructing a spur track on the property of the Church outside of that twenty-foot right of way. The Petition also sought an injunction to prevent the Railroads from doing any work on Church property outside of the twenty-foot right of way. Following a hearing, the Superior Court entered an injunction against the Railroads from continuing to construct the spur track on the Church's property. A copy of the Order is attached as Exhibit 2 to the Notice of Removal.

As noted above, on December 23, 2016, the Railroads filed their Notice of Removal, removing the state court action to this Court. Subsequently, on December 28, 2016, the Defendants filed their Answer and Counterclaim (the "Answer"). The Church now files this Motion seeking to have this case remanded back to state court where it rightfully belongs.

## Argument

**1. The Petition is based solely on state law property rights, and does not invoke rights or claims under any federal statute or regulation.**

The Petition relies upon well-established state law property rights and does not rely upon any federal regulations or statues to support the claims set forth therein. Under the "well-pleaded complaint" rule, federal court jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint. *Caterpillar Inc. v Williams,* 428 U.S. 386, 392 (1987).

In the Notice of Removal, the Railroads claim that since railroads and railroad tracks are involved, the relief requested should be subject to the exclusive jurisdiction of the Surface Transportation Board ("STB") under Section 10501(b) of the ICC Termination Act of 1995, as amended ("ICCTA"), 49 U.S.C. §10501(b), and therefore, that the district court has jurisdiction under 28 U.S.C. §1331. Merely alleging that the Defendants are subject to federal regulations does not create federal jurisdiction or support removal to federal court.

The question of federal jurisdiction is a threshold matter to be determined by the Court. Under the "well-pleaded" complaint rule, an action arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon" federal law. *Louisville & Nashville Railroad Company v. Motley*, 211 U.S. 149, 152 (1908). Here, the Church's Petition asserts only state law claims. Defendant's claim of federal preemption is raised a defense (*see* Answer, Second Defense), and it has long been held that a case cannot be removed to federal court on the basis of a federal defense, even a defense of preemption. *Caterpillar,* 482 U.S. at 393 (citation omitted).

Moreover, Defendants have misrepresented the facts, and the relief requested in order to fall within federal preemption and potential jurisdiction under ICCTA. In particular, the Church

has not sought in the Petition to prevent the Railroads from rehabilitating, repairing or using their track within the Railroads' acknowledged twenty foot right of way. Rather, the Petition seeks to prevent the Railroads from building a new spur track across property of the Church to which the Railroads have no title or interest. While the new track was being constructed generally in a location where a former spur track had been located, that track had been voluntarily removed and abandoned by the Railroads in 2008. Thus, it is clear that the STB no longer had any jurisdiction over the former spur or its location once the spur was abandoned and removed. As such, there can be no argument that STB jurisdiction or preemption apply to the Church property in question. Since no federal question is involved under 28 U.S.C. §1331, this Court is without original jurisdiction over the claims set forth in the Petition.

**2. This is not a case of complete preemption that is an exception to the well-pleaded complaint rule.**

The "complete preemption" exception is a narrow exception to the well-pleaded complaint rule that does not apply here. That exception only applies if the preemptive force of the federal statute is so overwhelming that it does more than merely provide a defense to a state-law claim. *See Caterpillar,* 482 U.S. at 393. However, claims under 49 U.S.C. §10501(b) do not rise to that level. The central concern of the ICCTA preemption language of that section is the "regulation of rail transportation" – and not incidental effects caused by a landowner's right to exclude others from its property. *Allied Industrial Development Corporation v. Ohio Central Railroad*, 2010 U.S. Dist. LEXIS 23994 (N.D. Ohio 2010), at *9-10. *See also Shupp v. Reading Blue Mountain & Northern Railroad Company*, 850 F. Supp. 2d 490, 496, 500-501 (M.D. Pa. 2012), 2012 U.S. Dist. LEXIS 15171, at **9-10, **23-26. Even the STB has acknowledged that ICCTA preemption is not complete:

> [W]e do not believe that all state and local regulations that affect railroads are necessarily preempted by 49 U.S.C. 10501(b). rather, we believe that state and local regulation is permissible when it does not interfere with interstate rail operations.

*The Township of Woodbridge, NJ v. Consolidated Rail Corporation, Inc.*, STB Docket No. 42053 (served November 28, 2000), 2000 STB LEXIS 709, at *10.

Defendants may also seek to recast the Church's claim as a claim involving main line railroad tracks that require STB approval under 49 U.S.C. §10903 to be abandoned by a railroad. However, the track that was in place on the Church's property before it was removed by the Railroads was clearly a spur or industrial track. Under 49 U.S.C. §10906, the STB does not have any authority over the "abandonment or discontinuance of spur, industrial, team, switching or side tracks." Thus, the Railroads were permitted, as they did, to abandon and remove the former spur track without STB authorization. Once they did so, the STB no longer had any jurisdiction over the removed track, or over the property where it was located.

Research has not uncovered any documents related to the original construction of the spur outside of the twenty foot right of way on what is now the Church's property, or the rights that the railroad at the time may have had to construct the track there. The railroad never had any recorded title to the underlying property. When originally constructed at some point before 1919, the track was short and stub-ended, located adjacent to a Farmer's Union warehouse, and stopping short of Webb Street. In 1919, an extension to the spur was constructed across Webb Street and across the property on the other side. The extension was constructed on behalf of, and was owned by the industry ("Clinkscales") to serve the industry. *See* Clinkscales Agreement attached hereto as Exhibit A.

There is only one track of the Railroads that lawfully crosses the Church's property, and that is the Railroads' main line track that is located within the twenty-foot right of way condemned

by the predecessors of the Railroads in 1880; however, the Railroads (and their predecessors) have not operated or engaged in commerce over this segment of their main line track for over 15 years. Despite the non-use, the Church recognizes that the Railroads cannot be forced to abandon the main line track without the authorization of the STB under 49 U.S.C. §10903. Accordingly, the Church has filed a notice with the STB giving notice that it intends to seek that authority in a proceeding docketed at the STB at Docket No. AB-1242, *Hartwell First United Methodist Church – Adverse Abandonment and Discontinuance- Hartwell Railroad Company and The Great Walton Railroad Company, Inc., In Hart County, GA*. The Church has delayed its filing due to the current litigation.

Accordingly, the Church has not sought in its Petition to enjoin the Railroads in the conduct of their business, i.e., operations or work on their main line track or otherwise within their acknowledged twenty foot right of way. The Church has only sought to stop construction on the Church's property where there had been no tracks since 2008, and to which the Railroads do not have any property right or interest.

**3. The Railroads have the burden of demonstrating that removal was proper.**

The removing party has the burden of proof to show that removal was proper, and in establishing federal court jurisdiction. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006). The removal statutes, here 28 U.S.C. §1441(a), are to be narrowly construed, and uncertainties about jurisdiction are to be resolved in favor of remand. *Miedema* 450 F.3d at 1328-30. *See also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). As shown above, since removal was improper, this case should be remanded to the Superior Court in Hart County, Georgia.

**4. Costs and fees should be imposed on Defendants based upon their improper removal of this action.**

Pursuant to 28 U.S.C. §1447(c), costs and fees may be imposed on defendants for improperly removing a state court action. Given the well-pleaded complaint rule, it should have been clear to the Defendants that removal to Federal Court was not proper. Moreover, the Railroads have misrepresented the status of the spur before construction began on November 23, 2016 (failing to reveal that they had abandoned and removed the track in 2008) in an attempt to create an argument for federal jurisdiction where there clearly is none. The removal was clearly intended to delay the proper state court proceedings, and to cause the Church to incur additional legal costs and fees. Because the removal was clearly improper and the Defendants did not have "an objectively reasonable basis for seeking removal," the Court should impose costs and fees on the Defendants. *Martin v Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). *See also Allied Industrial, supra* at *12-13 (awarding fees).

**Conclusion**

For the reasons set forth above, the Court should remand this proceeding back to Superior Court, and should impose costs and fees on the Defendants.

Respectfully submitted,

/s/ Walter James Gordon, Sr.

Walter James Gordon, Sr.
State Bar of Georgia #302488
The Gordon Law Firm
PO Box 870
415 East Howell Street
Hartwell, Georgia 30643
706.376.5418

Attorney for Plaintiff Hartwell First United Methodist Church

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2017, a copy of the foregoing Brief in Support of Motion for Remand was served via ECF on the following:

Matthew D. Williams
Matthew D. Williams & Associates, LLC
2215 Pilgrim Mill Circle
Cumming, GA 30041

/s/ Walter James Gordon, Sr.

Walter James Gordon, Sr.
State Bar of Georgia #302488
The Gordon Law Firm
PO Box 870
415 East Howell Street
Hartwell, Georgia 30643
706.376.5418

Attorney for Plaintiff Hartwell First United Methodist Church

15

Washington, July 30, 1919.



Hartwell R.R.

Mr. Foreacre
Mr. Oliver
Mr. Horne
Mr. Herman
Mr. Hungerford
Mr. Buckley
Mr. Harrison (PP)

I send you herewith copy of agreement dated June 28, 1919, with R. P. Clinkscales, for the construction and operation of an industrial track at Hartwell, Ga.

Geo. R. Anderson.

Exhibit "A" to
Brief of Hartwell First United Methodist Church
In Support of Motion for Remand to State Court



#15



AN AGREEMENT, made and entered into this 28th day of June, 1919, by and between

DIRECTOR GENERAL OF RAILROADS, by E. H. Coapman, Federal Manager, Hartwell Railroad, hereinafter for convenience styled the Railroad, party of the first part; and

R. F. CLINKSCALES, of Hartwell, in the State of Georgia, party of the second part;

W I T N E S S E T H:

THAT the RAILROAD, for and in consideration of the covenants of the party of the second part, hereinafter expressed, hereby agrees:

1. That it will lay and construct an extension of 356 feet to the easterly end of that certain existing spur track of the Railroad, 258 feet in length, at HARTWELL, in the County of Hart and State of Georgia, which springs from the main track of the Railroad, at a point thereon 4178 feet east of Milepost 1, and extends and with the said proposed 356 foot extension thereof will extend thence in an easterly direction for a distance of 614 feet, more or less; and will thereafter, during the life of this agreement, operate the entire track as extended, for the purpose of affording unto the party of the second part facilities for the shipment of his freights, in carload quantities, over the lines of the Railroad and its connections; ALL being substantially as shown upon the blue-print map of survey, dated February 19, 1919, revised March 10th and April 22nd, 1919, hereto annexed and made a part of this agreement.

AND the PARTY OF THE SECOND PART hereby covenants and agrees, in consideration of the advantage to be by him derived from the construction of said extension and the operation of said industrial track as extended:

2. That the Railroad shall not be obligated to provide or furnish any right of way necessary for the said extension proposed to be constructed hereunder, but the party of the second part hereby specifically guarantees to the Railroad the right to construct, and operate with its

engines and cars, the said extension or any portion thereof, extending beyond the present right of way limits of the Railroad, as the same has been located by survey and indicated on said attached blue-print map; the party of the second part hereby agreeing that he will obtain from the proper municipal authorities of said Hartwell, such grant or ordinance as may be necessary and required, in the judgment of the Railroad, to enable the Railroad to construct and operate the said extension across Webb Street, as shown on said attached blue-print.

3. That he will, as a condition precedent to any obligation on the part of the Railroad to begin the construction of said extension, provide and furnish on the ground all such first-class cross-ties as may be necessary and required by the Railroad for the construction of said extension; and will, moreover, advance and pay to the Railroad, upon demand, the sum of SIX HUNDRED TEN AND 50/100 DOLLARS ($610.50); said sum being the estimated cost of said extension, exclusive of the cross-ties furnished by the party of the second part as aforesaid; PROVIDED, however, if the actual cost of said extension, exclusive of the cross-ties, shall, upon completion thereof, be found to be less than, or in excess of, the said estimated cost, then the difference between such actual and estimated cost shall, if the actual cost is in excess of the said estimated cost, be paid to the Railroad by the party of the second part, promptly upon demand, but if such actual cost is less than the said estimated cost, such difference shall be repaid to the party of the second part by the Railroad, after the completion of said extension; it being understood that the party of the second part shall, upon the settlement of his account hereunder with the Railroad, own the said extension.

4. That he will, at his own cost and expense, maintain the said industrial track as extended from the point of clearance thereon to the terminus thereof, at all times during the life of this agreement, in good condition and repair and in all respects in accordance with the reasonable requirements of the Railroad looking to the safe and con-

not extend beyond the period of Federal control of railroads, and unless sooner terminated shall, as to him, terminate at the end of such Federal control.

9. That either party hereto may terminate this agreement at any time hereafter, but upon sixty (60) days' notice, in writing, to the other, of the election so to do, in which event, upon the taking effect of such notice, the Railroad may discontinue the operation of said industrial track and remove its property therefrom; and the party of the second part shall have the right to have the track materials in said extension located upon the right of way of the Railroad taken up and delivered to the party of the second part; it being understood that the work of taking up said extension shall be done; if the Railroad so elects, by the forces of the Railroad, but in any event at the expense of the party of the second part.

IN WITNESS WHEREOF, the parties hereto have executed these presents the day and year first above written.

In presence of:
W. A. Mahood,
P. F. Miller,
As to Railroad.

DIRECTOR GENERAL OF RAILROADS,
By
E. H. Coapman,
Federal Manager, Hartwell Railroad.

In presence of:
E. P. Vickery,
G. H. Norris,
As to party of second part.

R. P. Clinkscales.

W.N.F.
7/7/19.

P.H.

15014.

A true copy
teste:

Washington, D. C.,
July 26, 1919,-B.
1555-2.

HART COUNTY, GEORGIA

NOTE
50# Relay Rail to be used
Track to be constructed 13' from M.L.

4479 to M.P.
4436 To M.P. 1
258

Rt. of Way Line
Main Line
Bowersville
Rt. of Way Line

HARTWELL MILL

WEBB STREET

STREET

PROFILE

DATUM ASSUMED

Add'l R/W to be acquired from R.P. Clinkscales
.054 Acre
New R/W line is 13' from present R/W line and 7' from ℄ New Siding

UNITED STATES RAILROAD ADMINISTRATION
DIRECTOR GENERAL OF RAILROADS
HARTWELL RAILROAD

# HARTWELL, GA.

Sketch showing proposed extension of
Side Track for R. P. Clinkscales
Feb 19 1919 Scale 1"=50'

Resident Engineer

Office of
Engineer Eastern District
Charlotte N.C.

23649