## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| HARTWELL FIRST UNITED METHODIST CHURCH, INC. | : : : | |
| Plaintiff, | : : | |
| v. | : : | CASE NO. 3:16-CV-169 CDL |
| HARTWELL RAILROAD COMPANY F/K/A HARTWELL RAILWAY, AND GREAT WALTON RAILROAD COMPANY, | : : : : : | Removed from the Superior Court of Hart County, Georgia Case No. 16HV00611M |
| Defendants | : : | |

### BRIEF OF HARTWELL FIRST UNITED METHODIST CHURCH
### IN SUPPORT OF RESPONSE TO MOTION TO DISSOLVE INJUNCTION

Defendants Hartwell Railroad Company and The Great Walton Railroad Company (collectively referred to as "Defendants") have filed a Motion to Dissolve Injunction (the "Motion to Dissolve"), and a Brief in Support thereof ("Defendants' Brief"). Hartwell First United Methodist Church ("Church" or "Plaintiff") is filing a Reply to the Motion to Dissolve Injunction (the "Reply"), and this Brief is filed in support of the Reply.

### Counter-Statement of Background

Defendants hold a twenty-foot railroad right of way that bisects property owned by the Church in Hartwell, Georgia. There is a single set of railroad tracks within the right of way (the "main line"). The Defendants have not used the track within the right of way for at least 20 years. There was previously a private or ancillary spur track (the "Church track") that extended from the Defendants' main line onto and across what is now the Church's property for approximately 300 feet to serve a Farmers Union warehouse. In or about 1919, the predecessor of the Defendants

entered into an agreement with R.P. Clinkscales (the "Clinkscales agreement") to construct an industrial track extension (the "Clinkscales industrial track") connecting to the Church track across Webb Street to and along the Clinkscales warehouse to enable Clinkscales to receive rail service.

In 2008, Defendants voluntarily removed the Church track, and the Church developed the property. Shortly thereafter, the rail crossings at Webb Street of both the Clinkscales industrial track and the main line were removed, severing each set of tracks. Defendants gave no indication that they intended to reactivate service either with respect to the Church tracks or the adjacent main line. Indeed, the Defendants have since entered into a 99 year lease with TORCH (the "TORCH lease") for the development by TORCH of a walking trail, farmers market, and childrens playground. A complete copy of the TORCH Lease is attached as Exhibit B (Note: Exhibit A is attached to the Plaintiff's Response). The original Lease is recorded in the Hart County deed records at Deed Book 775, Pages 547 to 587. It is noted that the Lease provides that TORCH may opt to buy the entire area from Defendants for one dollar ($1.00 USD) at the conclusion of the Lease (Exhibit B, Page 15; Article 16.3).

On November 23, 2016 (the day before Thanksgiving), the Defendants entered onto the Church's property and began construction of a spur track running from the tracks within the right of way, onto and through the Church's property outside of the right of way. Despite the Church's objections, despite having previously removed and abandoned the Church track and despite not having even colorable title to the Church's property, the Defendants continued construction on November 25 and again on November 28, 2016. As part of the construction the Defendants tore up the Church's property, and destroyed two walkways between Church facilities that crossed the right of way pursuant to a license previously granted to the Church by the Defendants.

In order to combat the continuing trespass, on November 28, 2016, the Church filed a Petition for Declaratory Judgment and Injunctive Relief (the "Petition") in the Superior Court of Hart County, Georgia, docketed as Case No. 16HV00611M. A copy of the Petition is attached as Exhibit 1 to the Notice of Removal filed by the Railroads on December 23, 2016. The Petition sought a declaration that the Defendants do not have any property interests outside of a twenty-foot right of way that was condemned by their predecessors in 1880 (and confirmed by a survey conducted by the Office of Special Engineer dated June 30, 1916, recorded in Hart County pursuant to the 2008 Act of the Georgia Assembly, OCGA §44-5-167), and that the Defendants were wrongfully constructing a spur track on the property of the Church outside of that twenty-foot right of way. The Petition also sought an injunction to prevent the Defendants from doing any work on Church property outside of the twenty-foot right of way. Following a hearing, the Superior Court entered an injunction against the Defendants from continuing to construct the spur track on the Church's property, finding that the Defendants' acts posed "a substantial threat of irreparable injury to Plaintiff's property and of continuing trespass," and that there was "a substantial likelihood that Plaintiff will prevail at trial." A copy of the Order is attached as Exhibit 2 to the Notice of Removal.

**Argument**

1.  **There is no basis for a Motion to Dissolve.**

    The Motion to Dissolve is based on Fed. R. Civ. P. 65(b)(4) which provides for motions to dissolve, but only where a temporary restraining order has been issued under Fed. R. Civ. P. 65(b). However, the State Court Injunction Order, which was issued after notice and a hearing, and which is not limited in time, is not akin to a temporary restraining order, and therefore is not the proper subject of a motion to dissolve under Fed. R. Civ. P. 65(b). Accordingly, the Motion to dissolve should be dismissed.

2.  **Defendants have not demonstrated any basis for dissolving the injunction.**

    Defendants have not specifically addressed the criteria for an injunction or explained how or why the determination of the State Court to grant the injunction was in error. Defendants rely solely on their contention that the Church track, together with the Clinkscales industrial track, create a "runaround track" that is part of its "main line," and that as such the Church track is subject to the exclusive jurisdiction of the Surface Transportation Board. However, neither contention is correct.

    A.  **The track in question is either private or ancillary track, and not part of Defendants' main line.**

    The Surface Transportation Board ("STB") recognizes three types of track - private, excepted (or ancillary) and main line, each of which are subject to different levels of regulation by the STB. As the STB set out in *Pinelawn Cemetery – Petition for Declaratory Order,* Docket No. FD 35468 (served April 21, 2015), slip op. at 6-7, 2015 STB LEXIS 126, *15-18,*, the characteristics of these lines can be summarized as follows:

    > "Rail lines" (referred to herein as main line) are lines over which railroads provide point-to-point common carrier line-haul service to shippers. The STB has licensed rail carrier

entry and exit since 1920, and acquisition, construction and abandonment of rail lines are subject to the exclusive jurisdiction of the STB.

"Excepted track" (referred to herein as ancillary track) are tracks used for loading, reloading, classification, storage and switching operations that are incidental to, but not directly used in the carrier's line-haul transportation. These tracks are described in 49 U.S.C. §10906 as "spur, industrial, team, switching or side tracks" and which provides that such tracks and related facilities can be added or removed without authority from the STB.

"Private track" is track that is used exclusively by a track's owner for movement of its own goods (either with its own equipment or by contracting for service), and for which there is no common carrier obligation to serve other shippers that might locate along the line. The STB has no jurisdiction over private track.

The decision relied on by Defendants, *New Orleans v. Spencer,* 366 F.2d 160, 165-166, 1966 U.S. App. LEXIS 4960, **13-14 (5th Cir. 1966), makes similar distinctions between a line of railroad used for through traffic movements, and ancillary spur or industrial tracks used for loading, unloading, storage and switching incidental to the receipt of shipments. Under any analysis, the Church track is clearly either private track or ancillary track.

Defendants, in an attempt to sidestep the proper classification of the track at issue, have now decided to label the Church track as extended by the Clinkscales industrial track as a "runaround track." While that may be a descriptive term for what the track would allow the Defendants to do (assuming no cars were being delivered to customers were originally located adjacent to the track), it does not suggest what type of track it is. Indeed it is common for runaround tracks to be considered spur tracks, and to have runaround tracks within a railroad yard.

Here the history of the Church tracks and the Clinkscales industrial track indicate that they are either private tracks, or ancillary/spur tracks. From its review of historical deeds and plats of the Church's property, the Church believes that the Church track was constructed to serve a Farmers Union warehouse that was then located on the property. Since there are no records of title being transferred to the railroad for construction of the track, it most likely would have been the

subject of a contract between the parties. Such tracks that serve a single customer on that customer's property are generally private tracks. While the Church concedes that it has not discovered any contract covering the Church tracks, the more significant fact is that the Defendants have no deed, no easement, no condemnation order or any other document providing even bare color of title to the land underlying the Church track. Defendants concede, however, that the Church track was initially constructed as a spur track – it was stub-ended and only extended less than 300 feet (Defendants' Motion, Paragraph 1).

Sometime thereafter, the railroad and the property owner across Webb Street agreed to construct an extension to the existing "spur or industrial track." *See* Clinkscales agreement, ¶ 1. The purpose of the construction of the track was to provide facilities for the shipment of Clinkscales' freight. *Id.* The Clinkscales industrial track was constructed by the railroad but at the expense of Clinkscales, a private shipper of cotton seed oil. *Id.*, ¶ 3. Clinkscales retained ownership of the tracks on termination of the agreement, having paid the Railroad $600 for the rails and installation. *Id.,* ¶ 9. Although the Clinkscales agreement has no specific term, it is not perpetual as Defendants suggest. Rather it may be terminated on 60 days' notice. *Id.,* ¶9 and Memorandum of Agreement. While Plaintiffs do not know if the agreement was ever terminated, it could be terminated at any time by the Clinkscales heirs, successors or assigns. Based on the Clinkscales agreement, it is clear that such track is either private industrial track or an ancillary industrial track.

Defendants argue that the runaround track is necessary for them to operate the eastern end of the railroad, and that as such the runaround track is part of the main line. However, as discussed above, that is not the test. The tests look at how the track was or even might be used. Originally, the Church track and Clinkscales industrial tracks were built to serve the owners of the property

on which the tracks were built – to load and unload to the customers' adjacent warehouses. The only potential use alleged by Defendants now would be to move its locomotive from the east end of the train to the west end. Such use is clearly not part of the through movement of freight, and is only an incidental switching move. This is certainly not similar to the use of the tracks in *Spencer* where the tracks at issue were used as part of the through traffic moves.

Moreover, Defendants have not adequately explained why the use of the Church track and Clinkscales industrial track is essential for its operations. The railroad was built in 1880, and the Clinkscales industrial track was not built until 1919, and the connection back to the main line not until sometime later. Thus the railroad was able to operate for at least 40 years without a runaround track. Additionally, while "shoving" cars (instead of pulling them) may not be preferred, it is common practice with stub ended lines, and in delivering cars to customers. Defendants could of course put a locomotive on either end of the cars if they were just being moved in and out of Hartwell. In fact, Defendants' locomotive is designed to be operated precisely that way, with controls facing each end.

Based on the foregoing, it is clear that the Church track is either a private track or an ancillary spur track. Private track is outside the jurisdiction of the STB, and can clearly be removed without any authority from the STB. Additionally, ancillary spur tracks may be removed by a railroad without getting any authority from the STB. *See* 49 U.S.C. §10906. As noted above, Defendants voluntarily removed the Church track in 2008 and abandoned any rights that they had to the property underlying the track. Defendants took no action at STB at the time of their voluntary removal and abandonment as no action was required. Shortly after the Church track was removed, the crossing at Webb Street was removed, further severing the Clinkscales industrial

track from Defendants' main line. After the track removal, the Church developed the property consistent with the Defendants' abandonment of the property.

> **B.  The issues in this lawsuit are not subject to the exclusive jurisdiction of the Surface Transportation Board.**

As fully explained in the Motion for Remand, the issues raised in the Church's action were properly raised in state court, the matter was improperly removed, and the matter should be remanded to state court based on this Court's lack of jurisdiction. The preemption raised by Defendants is an issue properly raised as a defense, and is not a basis for removal of Plaintiff's lawsuit which relied solely to state law claims. The Motion for Remand, and Brief in Support, also addressed why the issues are not subject to the exclusive jurisdiction of the Surface Transportation Board ("STB"), and why the subject matter is not completely preempted.

Defendants misstate their action that the Church has sought to enjoin. Defendants were not reconstructing track within their existing right of way. Rather, they were constructing track in a location where they had voluntarily removed and abandoned the previous track (the Church track), and on property to which they have no title or contractual interest or right to occupy.

At best, Defendants arguments about the need for STB authority for abandonment only apply if the Church track were considered main line. As explained in Section A above, there is no basis for such a finding. Rather, the Church track is clearly either private or spur track, and as such the Defendants had the right in 2008 to remove and abandon the Church track without STB authority. Indeed, Defendants removal of the Church track is inconsistent with their argument that the Church track is part of their main line.

The Church concedes that the Defendants have an easement for a 20-foot right of way that bisects the property now owned by the Church on either side. The right of way includes Defendants' single main line track. The Church's action has nothing to do with the main line, and

the injunction does not in any way involve or prohibit Defendants from using the main line or otherwise working within the twenty foot right of way. The Church's proposed adverse abandonment proceeding at the STB will determine whether this portion of Defendants main line should be abandoned and removed. Although the STB proceedings are on hold, it was not an attempt to "forum shop" as Defendants suggest, as the Church has not asked in its lawsuit for any determination with respect to the main line.

Moreover, it is clear that to the extent that the outcome of this case will depend on a determination of the type of track involved, the courts have the power to make such a determination. Although Defendants cite *Spencer, supra,* for the factors that should be considered in determining whether track is an ancillary spur or line of railroad, the court significantly noted the following:

> Whether a particular stretch of rail is a line of railroad, or is an extended line of railroad, or is a spur, industrial, team, switching or side track, is a mixed question of law and fact to be determined judicially rather than administratively.

*Spencer*, 366 F.2d 160, 164, 1966 U.S. App LEXIS 4960, **8 (citation omitted). As such, this case is properly in the courts, should remain in the courts, and should be remanded to state court.

3. **Defendants have not demonstrated that the injunction is interfering with the conduct of interstate commerce.**

Defendants broadly allege that the injunction preventing continuing construction or use of the Church track is interfering with interstate commerce; however, that is clearly not the case. Not only have the Defendants failed to establish that service could not be provided without the Church track (in conjunction with the Clinkscales track), but Defendants have failed to even identify any specific customers that need to be served by or from the main line east of Athens Street, or even

what traffic use might require use of the track. Moreover, Defendants they have failed to advise the Court of the numerous other impediments to their use of either the main line or the Church track (itself or in conjunction with the Clinkscales industrial track). These impediments include the following:

- The crossings at Webb Street (for both the connection between the Church track and the Clinkscales industrial track, and for the main line) have been removed, paved over, and cannot be reinstalled without the permission of Georgia Department of Transportation ("Georgia DOT"). To the Church's knowledge, the Defendants have not applied for authority to reinstall the crossings.

- The crossing at Jackson Street is "inactive" and likewise would have to be reopened by Georgia DOT. To the Church's knowledge, the Defendants have not applied for authority to reactivate the crossing.

- The main line between Athens Street and Webb Street has not been rehabilitated – it is overgrown and impassable. For convenience in identifying Webb and other streets referenced herein, a street map is attached as Exhibit C, showing both the Church property and the area covered by the TORCH Lease.

- The Defendants' right of way (including the main line) between Athens Street South Webb Street, and its property between South Webb Street and the end of the line/depot at South Forest Avenue has been leased to TORCH for development of a walking trail, farmers market, and childrens playground. TORCH lease, §1.1.[1] In particular, the lease permitted TORCH to remove and re-lay the replica tracks between Webb Street and the depot at Forest Avenue in a manner that would not support rail traffic. *Id.,* §5.1. A portion of this work has been done by TORCH making it impossible to use the tracks beyond Jackson Street.

- No rehabilitation work has been done on the main line or the Clinkscales industrial track between Webb Street and Jackson Street, and such tracks are impassable.

From the foregoing, it is clear that there are numerous factors that make it currently impossible for the Defendants to provide rail service to or from the main line across the Church's property, or to use the Church track as part of any runaround movements for its locomotives, and the injunction is not the reason that Defendants cannot use the main line in interstate commerce.

---

[1] The TORCH lease acknowledges that Defendants are not currently in active operation in the area.

**Conclusion**

For all of the foregoing reasons, Plaintiff Hartwell First United Methodist Church requests that the Defendants' Motion to Dissolve be dismissed.

Respectfully submitted,

____/s/ Walter James Gordon, Sr._____
Walter James Gordon, Sr.
State Bar of Georgia #302488
The Gordon Law Firm
PO Box 870
415 East Howell Street
Hartwell, Georgia  30643
706.376.5418

Attorney for Plaintiff Hartwell First United Methodist Church

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of February, 2017, a copy of the foregoing Brief in Support of Response to Motion to Dissolve was served via ECF on the following:

Matthew D. Williams
Matthew D. Williams & Associates, LLC
2215 Pilgrim Mill Circle
Cumming, GA 30041

        /s/ Walter James Gordon, Sr.
Walter James Gordon, Sr.
State Bar of Georgia #302488
The Gordon Law Firm
PO Box 870
415 East Howell Street
Hartwell, Georgia 30643
706.376.5418

Attorney for Plaintiff Hartwell First United Methodist Church