**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| HARTWELL FIRST UNITED METHODIST CHURCH, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CASE NO.  3:16-CV-169 |
| HARTWELL RAILROAD COMPANY, F/K/A HARTWELL RAILWAY, AND GREAT WALTON RAILROAD COMPANY, | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S CLOSING BRIEF AND ARGUMENT**

Fundamentally, this is a case of title to land.  As Plaintiff's Complaint sets forth, the Church seeks a Declaratory Judgment concerning its title to land never deeded to, or taken by, the Defendant Railroads, on which a former spur track was removed over eight years ago, and for an injunction to stop Defendants' acts of trespass until the underlying title issue is resolved. After an evidentiary hearing, the Superior Court of Hart County granted the injunction and found as facts that the Plaintiff was likely to prevail, and stood to suffer irreparable injury in the absence of injunction.  Ct. Doc 1, Exhibit 2.  Despite Defendants' having raised a federal preemption defense, the underlying issue remains the same.

205496395.2

It is critically important to note from the very beginning that the Defendants[1] own an undisputed 20 foot right of way easement underlying its main line track, and the Plaintiff's case here has nothing to do with that main line. The case involving the main line will be heard before the Surface Transportation Board (STB) in a proceeding being brought by Plaintiff for adverse abandonment of the main line track which has been unused for commercial purposes since 1996.

In 2002, the Church acquired adjoining land on the north side of Defendants main line track from the former Hartwell Mills, and began planning an expansion project. In 2007, the Church acquired the land adjoining the main line track on the south side. Representatives of the Church had conversations with the Railroad owner, and the Church was permitted to cross the railroad right of way. In 2008, the Railroad removed the north spur track (the "Church track"). The Church went into possession of the land underlying the Church track, landscaped the area, and occupied it exclusively from that point forward. At the hearing, the Defendants made allegations that at the time they removed the track, they had reserved the right to rebuild the Church track sometime in the future; however, Defendants did not produce any evidence that demonstrates that they had indicated to the Church that they had any such intent or reserved any such right. Plaintiff denied that the Defendants had made any such indication.

The Church owns the land underlying the Church track by virtue of a Warranty Deed dated June 6, 2002 as recorded in Deed Book 449, Page 488, Hart County Deed Records. Both the plat of that tract (attached as Exhibit A), and the master plat dated January 24, 2017, drawn by Georgia Licensed Surveyor Slate Bauknight (which appears in the record as P-1), unequivocally show that the Defendants possess only a 20 foot wide right of way easement

---

[1] As discussed below, Plaintiff now believes that only The Great Walton Railroad Company has any rights to own or operate the 20 foot right of way. However, since the Defendants have not sought dismissal of Hartwell Railroad Company, Plaintiff will continue to refer to both railroads collectively as Defendants.

205496395.2

underlying the main line. As shown in P-6, the Defendants' predecessor took title in a contested condemnation case heard by a Sheriff's jury in Hart County in 1880. The condemnation award is the only documented source of Defendants' right to use the land under the main line, and it clearly describes Defendants' right of way easement as being 20 feet wide. The main line is not contested here.

The 20 foot width of Defendants' right of way is also shown on the Valuation Map of June 30, 1916. Plaintiff's Exhibit 2 (an enlarged view of which is seen in P-3) clearly establishes Defendants' right of way as 10 feet on each side of the centerline of the main track for a total of 20 feet. No right of way at all is shown for the Church track on the 1916 map, or any other document in evidence.

Despite having been provided with copies of the condemnation award and the Valuation Map, the Defendants have produced no evidence at all of another deed, agreement, survey or anything else showing their "right" to the land under the Church track (or to the track itself). Indeed, the Defendants are unable to show even "color of title" to the land formerly occupied by Church track.

In January 2016, the Church resolved to seek adverse abandonment authority from the Surface Transportation Board ("STB") with respect to the stub end of the track (the main line) from Athens Street to the end of the line, including the portion of the main line that bisects the Church's property. Abandonment is being sought since there had been no commercial use or operation of the track for more than 20 years, and the presence of the tracks interferes with the Church's future development plans for its property. The rail crossings at Webb Street were removed in 2009, making it currently impossible for the main line to be used for service. Furthermore, in 2015, the Railroad entered into a 99 year lease of all tracks from Athens Street

to the terminus, for use by the public as a children's playground and walking trail. The Lease gave the non-profit group TORCH of Hartwell, Inc. (Transformation Opportunities in Revitalizing Communities of Hart) the right to purchase the entire span of tracks for $1.00 at the end of the Lease. That served as a clear signal that the Railroad had no plans or rights to resume commercial operations on the track for at least 99 years, if at all. At the time the Railroad entered into the Lease, the Church track no longer existed, having been removed by the Railroad seven years earlier.

The Lease (P-8) is quite specific in defining the duties and responsibilities of the Defendant Railroad. Article 4.1 provides that TORCH "may use and occupy the premises and personal property in any manner permitted by applicable law" (P-8, Page 4), and sets forth the Railroads' acknowledgement that "Lessee intends to develop the leased premises and personal property as a public park, and Lessor expressly approves such use."

The Lease acknowledges the current state of non-use and track disrepair in Article VIII:

> "8.1 **Lessee's Duty to Maintain Premises.** During the Term of this Lease, Lessee shall maintain the Premises in a good and safe condition, and shall promptly make any and all repairs and replacements required to maintain such condition. The parties acknowledge that the Premises have not been regularly maintained for several years and are in a state of disrepair. Accordingly, Lessee shall not be obligated to make any alternations or additions to the Leased Premises." (P-8, Page 7).

The Lease gives TORCH complete control of the tracks and the right of way, and relieves the Railroad of any maintenance duty. "Lessee hereby assumes the **full and sole** responsibility for the condition, operation, repair, replacement, maintenance and management of the Premises." (P-8, Page 7 emphasis added). The Lease requires TORCH to insure the premises, and relieves the Defendant Railroad of the duty of insuring. In fact, the Lease specifically requires TORCH to indemnify and hold harmless the Railroad against any claims arising from the use of the tracks.

205496395.2

Surely it was not the intention of the parties to compel the non-profit TORCH to be responsible for maintaining and insuring the continuing use of tracks by the Railroad for commercial railroad traffic. Such use would be antithetical to the use of the right of way as public playground and walking trail.

In sworn testimony at the hearing on February 9, 2017, the owner of the Defendant Railroads B.R. Anderson testified that the Lease allowed the Railroad to resume commercial rail traffic on the leased tracks, but he was unable to cite any such provision in the Lease. The Defendant Railroad's former Vice President and General Manager David Bishop, candidly admitted that the Lease did not contain any reservation of rights, or even any acknowledgement by the parties to the Lease that the Railroad had any intention at all to resume commercial rail traffic on these long dormant tracks. Indeed, the Lease gave TORCH the right to remove the tracks between Webb Street and South Forest Avenue, and specifically relieved TORCH of any obligation "to reinstall the rails in such a manner and to such specifications that the rails are able to support rail traffic." (P-8, Art 5.1) This provision by itself clearly shows that the Defendant Railroads had no intention of carrying commercial traffic or otherwise using any of the tracks for 99 years, if ever.

In a weak attempt to provide some evidence that would help the Court and the parties accept that the Defendant Railroad could, in fact, resume commercial operations on these tracks, the railroad owner offered testimony that he could "break the Lease." The Lease provides otherwise. The right of the Defendant to terminate this 99 year lease is very limited in scope as is fully set forth in Article 14. The Lease identifies five specific grounds which authorize termination. Notably, there is no provision that would allow termination for convenience, or in order to resume commercial railroad operations. (P-8, Pages 11-12).

These facts amply demonstrate that the Defendant Railroad is contractually unable to resume its use of the tracks for commercial rail operations. This is of critical significance in that it utterly and completely undermines Defendants' claims that the relief requested by Plaintiff would interfere with interstate commerce, and therefore its grounds for removal to federal court. Any claim by the Defendant Railroad of interference with interstate commerce is simply without basis and fails completely in light of the Lease which Defendant Railroad freely negotiated and voluntarily entered. That being so, Defendants' effort to remove the case must fail as well.

The removal fails on multiple grounds as set forth in Plaintiff's Brief in Support of Motion for Remand. (Court Document 5-1). First, the well pled complaint rule: The law is well settled that in order to support removal, the Plaintiff's Complaint must present a federal question, not the defense filings.

Second, the only exception to the well pled Complaint rule is where Federal law is so broad and sweeping that it provides "complete pre-emption". This argument fails as well. The Defendants seek to confuse this issue by treating the existing main line track and the now-removed Church spur track as the same type of track, citing that both are necessary for commercial rail use, despite the fact that the tracks had very different uses, and the fact that neither track has seen commercial rail traffic since 1996.

Plaintiff believes, and the law supports, that STB has no authority when a railroad seeks to reinstall a spur or industrial track, after removal, on land the railroad has no title or other right to use. Moreover, the STB has no authority to determine title to land regardless of the type of track involved.

Defendants have not been forthcoming to the Court about the ownership and operating rights of the Defendants with respect to the railroad right of way and main line tracks that split

the Plaintiff's property. At the hearing, Defendants and Counsel argued that their ICC filings clearly described their rights to operate over the main line track, as well as over the Church track and the Clinkscales industrial track. No supporting documentation was offered in support of this statement. Indeed, further research of ICC records reveals that, not only do the Defendants' filings not describe anything beyond the main line track, but they also reveal that neither Defendant actually obtained authority from the ICC to acquire or operate any tracks that were operated by the predecessor Hartwell Railway Company.

Attached as Exhibit B is a Federal Register notice relating to a 1990 exemption giving "The Great Walton Railroad Company d/b/a Hartwell Railroad Company" trackage rights to operate over the tracks of Hartwell Railway between Bowersville and Hartwell. 55 Federal Register 12958 (April 6, 1990). The Federal Register notice merely refers to the rail line "between milepost 0.0 at Bowersville, GA, and milepost 10.5, at Hartwell, GA." The notice of exemption filed by The Great Walton has even less detail. Significantly, the notice does not cover or seek an exemption for the proposed acquisition of the Hartwell Railway rail line. Plaintiff's counsel has not located any other Interstate Commerce Commission ("ICC") decisions or notices, or Federal Register notices related to the acquisition of the rail line by either Defendant, or to any operating authority granted by the ICC (the predecessor entity to the Surface Transportation Board).

Plaintiff's counsel has done further research since the hearing, and was able to obtain copies from the STB archives of all of the filings made in The Great Walton ICC proceeding referenced in the Federal Register notice. Copies of the filings are attached hereto as Exhibit C. While the notice of exemption indicates that The Great Walton was intending to purchase the rail line and other assets of the Hartwell Railway (a copy of a draft asset purchase agreement is

attached), the notice of exemption itself relates only to the grant of trackage rights to operate over the line of Hartwell Railway prior to the completion of the acquisition, and does not seek an exemption to acquire and operate the line.[2]

As the draft acquisition agreement is between Hartwell Railway and The Great Walton, it appears that The Great Walton was to be the purchaser of the assets of the Hartwell Railway. Moreover, the separate corporate entity "Hartwell Railroad Company" was not formed until 1995, and accordingly could not have been the purchaser of the Hartwell Railway assets. [GA Certificate of Incorporation attached as Exhibit D][3]

In 1995, The Great Walton, since it was already a rail carrier, would have been required to have obtained authority, or an exemption, from the ICC under 49 U.S.C. §11343 (now 49 U.S.C. §11323) to purchase the property of another rail carrier.[4] Plaintiff's counsel has found no record of The Great Walton ever having sought or received from the ICC authority or an exemption to acquire the rail line of Hartwell Railway.[5]

Because the Defendants never received proper authority to acquire or operate the rail line at issue, they are not entitled to the benefit of preemption and their effort to remove must fail. *See Suffolk & Southern Railroad LLC – Lease and Operation Exemption – Sills Road Realty, LLC*, STB Finance Docket No. 35036 (served August 27, 2008), 2008 STB LEXIS 526, at *7-8 (activities that require a license from the Board, but for which a license has not been obtained,

---

[2] The notice of exemption indicates that The Great Walton would file a copy of the trackage rights agreement once it was signed (as was required by the applicable regulations at the time). However, the documents provided by the STB do not show that the trackage rights agreement was ever filed with the ICC. Accordingly, it appears that even the trackage rights were never properly exempted.

[3] Part of the confusion of what entity has been operating the line comes from The Great Walton filing which indicates that it would be doing business as "Hartwell Railroad Company" and then goes on to reference itself as Hartwell Railroad Company. The Great Walton has not registered "Hartwell Railroad Company" as a trade name.

[4] Under the current law, an existing carrier also has the option to obtain authority, or an exemption, to acquire the property of another rail carrier under 49 U.S.C. §10902.

[5] Similarly, Plaintiff's counsel has found no record of Hartwell Railroad Company having obtained authority or an exemption from the ICC to acquire and/or operate the rail line of Hartwell Railway Company.

- 8 -

are subject to the application of state and local laws and are not entitled to preemption).  *See also Allied Erecting and Dismantling, Inc. and Allied Industrial Development Corporation – Petition for Declaratory Order – Rail Easements in Mahoning County, Ohio*¸ STB Docket No. FD 35316 (served September 17, 2015), 2015 STB LEXIS 311, at *24-25, *petition for review denied, Allied Erecting & Dismantling Co. v. STB*, 835 F.3d 548 (6th Cir. 2016).  Accordingly, since Defendants have no federal preemption defense, it does not matter what type of track the Church track is, and this case should be remanded to Superior Court for a determination of the state law property issues.

Throughout the Defendants' response, the Defendants refer to their need to "rehabilitate and repair the tracks," despite the fact that no major work has taken place on the main line east of Athens Street, or on the crossings, other than where the newly constructed spur track ties in to the main.  The STB, by its own rulings cited in Plaintiff's Brief in Support of Motion for Remand, and Brief in Support of Response to Motion to Dissolve, has made it clear that their jurisdiction is not all encompassing, and that there are circumstances where their involvement is not required.  As previously argued, under 49 USC§10906,  the STB does not have authority over abandonment or discontinuance of "spur, industrial, team, switching or side tracks."   Thus, the Defendants attempt to reclassify the Church spur track as a "run-around" (which they equate without support to main line track), despite acknowledging that the Church track was originally built as a spur.  This reclassification fails as well in light of the Clinkscales Agreement (P-11) which affirmatively shows that the track to which the Church track was connected until 2008 is an "industrial track" built at the expense of, and for the convenience of Clinkscales and his successors.  Mr. Clinkscales was given the duty to obtain the City's permission to cross Webb Street.  Further, Clinkscales was given the duty to repair and maintain the track at <u>his own</u>

expense. Clinkscales even had to pay any damage claims arising from the Railroad's use of the track. The Railroad has produced no evidence that the Railroad ever had title to the underlying property, or that they had the right to add connecting track to the industrial track. Defendants have also not shown that the use of track as a runaround track (as opposed to use for serving Clinkscales) was permitted by the land owner. The Clinkscales agreement makes it clear that Clinkscales "shall, upon settlement of his account hereunder with the Railroad, own said extension" (P-11, p.2, item3). More importantly, Defendants have not shown why the use of track "runaround" for a locomotive is anything other than ancillary to the handling of freight on the main line.

Plaintiff notes that no case cited in Defendants' pleadings sets forth the same factual scenario as the case at bar. Those cases typically involve matters in which the railroad's active use of existing tracks is subject to local regulation or removal, and as such invoke STB jurisdiction. The very fact that in many cases the courts have found no preemption under the ICC Termination Act of 1995 ("ICCTA") supports the argument that ICCTA does not provide "complete preemption." The ICCTA preempts local acts which seek to regulate railroad operations and the use of lawful railroad tracks. No provision of the ICCTA mandates preemption in a case which involves title to land never owned by the railroad, and from which a track was voluntarily removed by the railroad. The STB frequently declines to determine land ownership, recognizing that property rights are more appropriately decided by the courts.

The STB has declined to issue declaratory orders when the claims primarily involve the application of state property law. *Ingredion Incorporated – Petition for Declaratory Order* STB Docket No. 36014 (served September 30, 2016), 2016 STB LEXIS 273, at *7 (primary issue is based on a claim that an easement was violated), and at *9 (questions of property law generally

are more appropriately decided by the courts).  *See also Allegheny Valley Railroad - Petition for Declaratory Order – William Fiore*, STB Docket No. FD 35388 (served April 25, 2011), 2011 STB LEXIS 192, at *8-10 (questions concerning size, location and nature of property rights are best addressed by a state court).  The STB has noted in such cases that both the STB and the courts have concurrent jurisdiction to determine preemption, and that the state court is able to address any preemption arguments that may become relevant.  *Ingredion,* slip op. at *7.

Even if The Great Walton has authority from the ICC to acquire any of the rights of Hartwell Railway (which, as discussed above, Plaintiff believes is not the case), the grant of authority cannot be viewed as conveying property rights, as property ownership rights are determined only by state law.  *Allegheny Valley,* 2011 STB LEXIS 192, at *9, n. 4; *MVC Transportation, LLC – Acquisition Exemption – P&LE Properties, Inc*., STB Finance Docket No. 34462 (Sub-No. 1) (served October 20, 2004), 2004 STB LEXIS 666, at *12 (proper for Pennsylvania court to resolve the dispute over ownership of the yard track assets, and to determine issues involving local property law, contract law and mortgages).

The true question here is not whether federal preemption might be available as a defense, but rather whether there is "complete preemption." Even if preemption were available as a defense, that does not justify removal to federal court, and the case should be remanded to the Superior Court of Hart County.  *See* Brief in Support of Motion for Remand, pp. 3- 6.

Even the STB has made clear that preemption can be determined by either the STB itself or by the courts.  *See Ingredion,* 2016 STB LEXIS 273; *Allegheny Valley,* 2011 STB LEXIS 192. Similarly, either the STB or the courts can determine the type or character of the tracks based on a case-by-case analysis, fact specific analysis that focuses on the use of the tracks and their physical characteristics.  New *York City Economic Development Corporation – Petition for*

*Declaratory Order*, STB Finance Docket No. 34429 (served July 15, 2004), 2004 STB LEXIS 434, at *12-13 (noting that both the STB and the courts apply the same test).  *See also Nicholson v* ICC, 711 F.2d 364, 367-368 (D.C. Cir. 1983); *New Orleans Terminal Co. v. Spencer*, 366 F. 2d 160 (5th Cir. 1966).  These decisions are a strong indicator that there is not complete preemption just because a railroad and the provisions of 49 U.S.C. §10501(b) may be involved.

This is a case where the railroad had voluntarily removed the tracks and had not operated for over 20 years, not a case where the Church was trying to interfere with or removed existing tracks that were in active use.  In this case, the Church seeks only to prevent the construction of track on the Church's property where the railroad has no colorable title or demonstrable contractual right.

There are a number of district court decisions remanding cases back to state court that have found in similar circumstances that there is no complete preemption under 49 U.S.C. §10501(b). *Allied Industrial Development Corporation v. Ohio Central Railroad*, 2010 U.S. Dist. LEXIS 23994 (N.D. Ohio 2010), at *9-10, *petition for review denied, Allied Erecting & Dismantling Co. v. STB*, 835 F. 3d 548 (6th Cir. 2016) (ICCTA's central concern is the "regulation of rail transportation, and not the incidental effect on rail transportation caused by a landowner's right to exclude others from his property); *Shupp v. Reading Blue Mountain & Northern Railroad Company*, 850 F. Supp. 2d 490, 496, 500-501 (M.D. Pa. 2012), 2012 U.S. Dist. LEXIS 15171, at **9-10, **23-26; *Coulas Viking Partners v The Belt Railway Company of Chicago*, Case No. 16-cv-3583 (ND Ill, ED 2016), 2016 U.S. Dist. LEXIS 93539, (state court action sought declaration that plaintiff owned property in fee title based on breach of easement, asserting state law claims for trespass and ejectment, seeking injunction requiring  removal of railroad tracks; remanded finding judicial actions involving privately bargained rights or generally applicable

- 12 -

property law are not completely preempted by 49 USC 10501(b))[6]. Because any decision in this case will depend on the facts of the case and the specific nature of the disputed property, it is clear that complete preemption does not apply. *Coulas Viking*, 2016 U.S. Dist. LEXIS 93539, at *9-10[7]; *Shupp*, 850 F. Supp. 2d 500 ("as-applied" analysis is antithetical to concept of complete preemption). *See also* Brief in Support of Motion for Remand at pp. 4-5.[8]

The Defendants' sole argument for preemption is based on their bare assertion that the Church track together with the Clinkscales industrial track is part of main line track[9] that cannot be abandoned without STB authority. Of course, the Defendants' actions in removing the Church track, and leasing the main line right of way to TORCH, are inconsistent with their very argument. Moreover, as discussed above, it is not even clear that Defendants can even assert preemption since it appears that neither Defendant was ever properly authorized by the ICC to acquire or operate the rail line that was acquired from Hartwell Railway.

At best, Defendant's argument regarding preemption only applies if the Church track is considered main line track. (Plaintiff's state court action does not involve the acknowledged main line track within the 20 foot right of way; it only deals with the title to property where the

---

[6]  Related to the *Ingredion* STB proceeding cited above in which the STB declined a request seeking a declaratory order that the case was subject to the STB's exclusive jurisdiction. The STB found that the case primarily involved application of state property law, and that the state court could address the preemption arguments. (Ingredion had intervened in the state court action on behalf of the railroad, removed to federal court and sought dismissal.)

[7]  The court in *Coulas Viking* remanded despite suggesting that it thought preemption might apply. The Court here is not being asked to determine whether preemption applies; it is only being asked to determine, for jurisdictional purposes, whether complete preemption applies.

[8]  Plaintiffs have not found any decisions of courts in the 11th Circuit that have addressed the question of remand and complete preemption in the context of a railroad dispute and the application of 49 USC §10501(b). The court in *Pace v. CSX Transportation, Inc.*, 613 F. 3d 1066, 1069, n. 1 (11th Cir. 2010) affirmed a finding by the district court that preemption applied as a defense, but it noted that a claim of complete preemption carries a higher burden than merely proving a defense of preemption. Moreover, there were no property claims involved in the case.

[9]  The Defendants, without any support, equate what they call a "runaround track" with main line track. However, a runaround track by its very nature (it is merely used to enable a locomotive to move from one end of a string of cars to the other) is ancillary to the movement of freight, not part of the freight handling, and therefore is ancillary and not main line track. *See* discussion below, and in Brief in Support of Response to Motion to Dissolve at 4-8.

- 13 -

Church track was before it was voluntarily removed.)   However, the Church track was never more than an ancillary track (*see*  Brief in Support of Response to Motion to Dissolve, pp. 4-8), and therefore, the railroad could, as it did, remove and abandon the track without STB authorization.  *See* 49 U.S.C. §10906.  As discussed above, and as noted in the Brief in Support of Response to Motion to Dissolve, the STB and the courts adopt a case-by-case fact-specific determination of whether a particular track segment is railroad line or ancillary track, and it is appropriate for a court to make such a determination.  *See Spencer,* 366 F. 2d at 164.[10]

Finally, the Defendants offered no evidence or credible testimony in support of their conclusory statements that the injunction will interfere with interstate commerce, and that the Church spur track (or even the main line) is necessary for use in commercial rail operations in interstate commerce.  At the hearing,  representatives of the Defendant railroads testified that the last commercial rail traffic utilizing these tracks ended with the closure of Goldkist in 1995, and the demolition of Hartwell Grain and Elevator in 1996.

The only testimony of the continuing need for use of the tracks concerned shipments of raw materials to local manufacturer Quality Holdings.  B.R. Anderson testified that he expected Quality to increase traffic from the current two cars per month at some undetermined time in the future.  Quality Holdings' CEO estimated increasing use of rail from 21 cars per year to 25 cars per year.  Significantly, Mr. Anderson testified that the Defendant railroads serve Quality Holdings now without using either the Church spur track or the main line track which bisects

---

[10]      The mere fact that the Church track and Clinkscales industrial track connect with Defendants' main line does not make those tracks main line track. "Almost all track excepted under section 10906 eventually connects by some means with track carrying line-haul movements in interstate commerce."  *MVC*, 2004 STB LEXIS 666 at *10.  If the tracks were used for an auxiliary purpose such as switching, then the tracks are "excepted track" under Section 10906.

205496395.2

Church property.  Likewise, Quality Holdings CEO testified that his business and the dramatic growth it achieved in 2016, was satisfactorily handled by the current rail service. Defendants did not explain why the addition of a single car every three months would require them to change their current operations.   Moreover, Defendants produced no formal written requests for additional service, or commitments to provide additional service, in addition to the service to Quality Holdings.

In sum, none of the issues raised by Defendants must be resolved solely by the STB, and as such there is no complete preemption.  Without complete preemption, the case must be remanded to Superior Court.  Defendants have not met their burden of demonstrating removal was proper.  Brief in Support of Motion for Remand, p. 3.  As such, Plaintiff's Motion to Remand should be GRANTED, and there is no basis for acting on the Defendants' Motion to Dissolve.

 /s/ Walter James Gordon, Sr._____
Walter James Gordon, Sr.
State Bar of Georgia #302488
The Gordon Law Firm
PO Box 870
415 East Howell Street
Hartwell, GA 30643
706.376.5418

Attorney for Plaintiff Hartwell First United
Methodist Church

205496395.2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of February, 2017, a copy of the foregoing Closing

Brief and Argument was served via ECF on the following:

Matthew D. Williams
Matthew D. Williams & Associates, LLC
2215 Pilgrim Mill Circle
Cumming, GA 30041

_____/s/ Walter James Gordon, Sr._____
Walter James Gordon, Sr.
State Bar of Georgia #302488
The Gordon Law Firm
PO Box 870
415 East Howell Street
Hartwell, Georgia 30643
706.376.5418

Attorney for Plaintiff Hartwell First United
Methodist Church

205496395.2